UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Larry James Moore, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:07-1034 |
| v. ) | Judge Nixon/Brown |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

To:   The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), as provided under Title II and Title XVI of the Social Security Act (the "Act") as amended. Plaintiff is proceeding *pro se*. This case is currently pending on plaintiff's motions for judgment on the administrative record. (Docket Entries 22, 23, 24, 40, 44, 45) For the reasons stated below, the Magistrate Judge recommends that Plaintiff's motions for judgment be GRANTED, and that the decision of the Commissioner be REVERSED. The Magistrate Judge recommends that this case be REMANDED to the Commissioner to further develop the record, specifically to obtain RFC assessments from the Plaintiff's treating physicians for the period of 2000 forward. The Magistrate Judge further recommends that Plaintiff's request

1

to reopen his 1998 application be DENIED

## I. INTRODUCTION

Plaintiff protectively filed his applications for DIB and SSI on September 9, 2002, alleging he became disabled and unable to work on January 27, 1995, due to neck, back, shoulder and arm pain and injuries as well as depression.[1] (Tr. 356-359, 761-763, 767, 797) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then filed a request for a hearing by an Administrative Law Judge ("ALJ") and a hearing was held on April 13, 2005. (Tr. 764-790). Plaintiff was at that time represented by counsel and amended his alleged onset date from January 27, 1995, to July 3, 2000. (Tr. 764). On October 18, 2005, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of May 31, 2004. (Tr. 797-803).

The ALJ made the following findings:

1.  The claimant met the disability insured status requirements of the Social Security Act on December 31, 2000. Since finding the claimant not disabled from date of application through May 30, 2004, and finding him disabled as of May 31, 2004, he no longer qualifies for disability and Disability Insurance Benefits.

2.  The claimant has not engaged in any substantial gainful activity since the disability onset date

3.  The medical evidence establishes that the claimant has the following severe impairments: lumbar spondylosis with spurring, cervical degenerative disc disease with spondylosis, possible herniation at C5-6, bilateral radiculopathy at C-6, carpal tunnel syndrome, right shoulder impingement type change involving the rotator cuff, and left shoulder abnormalities

4.  The claimant has no impairment or combination of impairments that meet or equal the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

---

[1] Plaintiff had previously protectively filed a disability application on November 1, 1996. A hearing was held on March 24, 1998, where Plaintiff was represented by counsel. (Tr. 286-322). On July 18, 1998, Plaintiff was found to be not disabled. (Tr. 15-20).

2

5. The claimant's assertions concerning his ability to work are generally credible for the reasons set forth in the body of this decision.

6. The claimant retained the maximum residual functional capacity to perform light work with additional limitations. The specific limitations are discussed in the body of this decision.

7. The claimant has been unable to perform the requirements of his past relevant work.

8. The claimant was 55 years old (a person of advanced age) on the date his disability began.

9. A prior Administrative Law Judge decision dated July 18, 1998, found that the claimant was limited to light exertional work. He has not experienced medical improvement since the date of that decision. Based upon Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), the claimant is limited to light exertional work.

10. The framework of medical-vocational rule 202.14 of Appendix 2 allow a finding of not disabled.

11. As of May 31, 2004, the claimant's age is defined as a person approaching advanced age and a finding of disabled is allowed within the framework of medical-vocational 202.06 of Appendix 2.

Plaintiff sought review from the Appeals Council and May 14, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby rendering that decision the final decision of the Commissioner. (Docket Entry 56) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

The Magistrate Judge will address the relevant records when dealing with Plaintiff's statement of error below. However, whether specifically referenced or not, the Magistrate Judge has thoroughly reviewed the entire record.

## III. CONCLUSIONS OF LAW

Case 3:07-cv-01034 Document 57 Filed 05/15/09 Page 3 of 12 PageID #: 179

A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B. Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

4

(1) If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v Sullivan*, 923 F.2d 1175, 1181 (6th Cir 1990).

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe *See* 42 U S C § 423 (d)(2)(B).

### C. Plaintiff's Statement of Error

The Magistrate Judge will first address which Commissioner's decision is at issue in this case Plaintiff has filed two separate claims for benefits, one with an ALJ opinion issued on July 18, 1998, and one with an ALJ opinion issued on October 18, 2005. Plaintiff appears to argue that there were errors in the 1998 ALJ opinion, as well as the 2005 ALJ opinion, and that he is entitled to benefits from as far back as 1995 However, it is clear to the Magistrate Judge that the 1998 ALJ opinion is final and binding and should not be reopened Plaintiff filed his second request for benefits more than four years after the initial denial of his first application for benefits Therefore,

6

Case 3:07-cv-01034 Document 57 Filed 05/15/09 Page 6 of 12 PageID #: 182

Plaintiff's first application can be reopened only upon a showing of fraud or similar fault, new and/or material evidence, error on the face of the evidence, or clerical error. 20 C.F.R. §§ 404.988 and 416.1488. Plaintiff has made no such argument or showing. Further, Plaintiff appealed the denial of his first application to this Court, having his case dismissed with prejudice after receiving over four months of extensions in which to file a motion for judgment on the administrative record or to acquire legal counsel. (Case No. 3:00-cv-00570, DE 25). Therefore, the Magistrate Judge will address only those statements of error related to the 2005 ALJ opinion, with the alleged onset date of July 3, 2000, recommending that Plaintiff's first application not be reopened.

The Plaintiff argues that the ALJ's RFC determination that he was capable of light work until May 30, 2004, is incorrect as more weight should be afforded to the RFC assessments of his treating physicians, Dr. Gardner Dixon, Dr. Winston Griner, and Dr. Ralph Hobbs [3] (Docket Entry 44). The Defendant responds that the ALJ gave the proper weight to the opinions of Plaintiff's treating physicians and made an RFC determination that is supported by substantial evidence.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently

---

[3] Plaintiff also argues that no weight should be given to the 1995 opinion of Dr. Robert Clendenin. As stated previously, the 1998 ALJ opinion should not be reopened. The 2005 ALJ opinion makes no mention of Dr. Clendenin, instead relying on more recent records and evaluations.

7

supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency with the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Additionally, it should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (1984).

The ALJ concluded that Plaintiff had an RFC which allowed him to perform a range of light work. Specifically, the ALJ found that Plaintiff could sit at least 6 hours out of an 8 our day, walk or stand at least 1 hour without interruption, lift and/or carry 10 pounds frequently and 20 pounds occasionally, could not climb ladders, ropes or scaffold, could not crawl, could occasionally perform other postural activities, needed to avoid hazardous machinery and unprotected heights, and could be exposed to moderate extremes in temperatures, dampness, wetness and humidity. (Tr. 800-801) Based upon this RFC, the VE testified that a significant number of light jobs existed in the economy. (Tr. 783-784)

Considering the Plaintiff's age, education and skilled work experience, the ALJ noted that

8

medical-vocational rule of 202.14 directed a finding of not disabled up until May 30, 2004. (Tr 800-802). However, as of May 31, 2004, medical-vocational rule 202.06 applied, directing a finding of disabled after May 31, 2004, Plaintiff's 55th birthday, as he was then considered to be a person of advanced age. (Tr. 801). Therefore, the ALJ concluded that the Plaintiff became disabled as of his 55th birthday but not before. (Tr 801).

Dr. Dixon began treating the Plaintiff in early 1995 On March 19, 1998, he completed a medical assessment, opining that Plaintiff could lift no more than 30 pounds, could stand and/or walk 4 hours in an 8 hour workday 1-2 hours without interruption, could sit 2 hours in a workday ½-1 hour without interruption, could occasionally perform postural activities, would have limited reaching, handling, and pushing/pulling, and would have environmental limitations with moving machinery, extreme temperatures, chemicals, dusk, fumes, humidity and vibration. (Tr. 252-254)

Dr. Griner and Dr. Hobbs, who also began treating the Plaintiff in 1995, opined on March 6, 1998, that Plaintiff could occasionally lift up to 10 pounds, frequently lift less than 10 pounds, could stand and/or walk 1-2 hours in a workday, could sit 2-4 hours in a workday 1-2 hours without interruption, could never perform postural activities, would have worsening pain from reaching, handling, feeling and pushing/pulling, should avoid heights, moving machinery, and vibration and could tolerate extreme temperatures, chemicals, dust, noise, fumes, and humidity. (Tr. 242-245). Further, letters, dated July 1, 1998 and March 17, 2003, listed Dr. Griner's diagnosis that, "due to the severity of [Plaintiff's] medical problems," he was incapable of working since January 27, 1995. (Tr. 425).

On January 1, 1997, Dr. Davis performed the first of two consultative physical examinations. (Tr. 178-180). Dr. Davis opined that Plaintiff had musculoskeletal injuries which were chronic and

9

not likely to improve with active treatment. (Tr. 180). Dr. Davis further opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, could stand and/or walk 6 hours in an 8 hour workday, could sit 8 hours in an 8 hour workday, had limited bending as well as limited climbing and heights. (Tr. 180).

On June 3, 2003, Dr. Davis performed a second consultative physical examination. (Tr. 602-604). Dr. Davis diagnosed the same injuries, finding that "medical conditions have been chronic," recommending medical/psychological maintenance with weight loss. (Tr. 604). Dr. Davis maintained the same limitations as above, adding limitations in squatting and overhead reaching. (Tr. 604).

On August 1, 2003, Dr. Reeta Misra completed a physical RFC assessment, opining that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday with normal breaks, was unlimited in pushing and pulling, could occasionally perform postural activities, and had no environmental limitations. (Tr. 605-609).

The ALJ chose to discount the opinions of Dr. Dixon, Dr. Hobbs, and Dr. Griner, Plaintiff's treating physicians, stating that "in the absence of back or hand surgery," "treatment has been essentially routine and conservative in nature." (Tr. 800). Further, the ALJ stated that "Dr. Griner's opinion is overly optimistic and relied primarily on subjective allegations and is, therefore, accorded little weight." (Tr. 800). Instead, the ALJ relied upon the opinions of an examining consultative physician and a non-examining consultative physician. (Tr. 800). Contrary to the Defendant's arguments, these RFC's are not the same or similar, as clearly outlined above.

The undersigned finds that the ALJ did not afford the proper weight to Plaintiff's treating

10

physicians' opinions based upon the review of the entire record. The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of claimant's treating physician. *Shelman*, 821 F.2d at 321. As such, the opinions of the non-examining state agency doctors do not provide a sufficient basis for rejecting the opinions of Plaintiff's treating physician. Further, the opinion of a treating physician is entitled to greater weight than the contrary opinion of a consultative examining physician. *Farris v Secretary of H.H.S.*, 773 F.2d 85, 90 (1985). This clearly counters the ALJ's reliance on the opinions of Dr. Davis and Dr. Misra. Additionally, while the ALJ was convinced that Dr. Griner was basing his opinions on Plaintiff's subjective complaints of pain, such subjective complaints of pain or other symptoms may support a claim of disability. *Blakenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).

The record substantiates that Plaintiff's treating physicians routinely treated the Plaintiff since 1995. Treatment records reflect Plaintiff's chronic problems with back and shoulder pain associated with degenerative disc disease, spurring and spondylosis for which his treating physicians have prescribed medication, performed injections, issued referrals to specialists, and conducted laboratory testing. Throughout several years of treatment notes, his treating physicians continuously report Plaintiff's complaints of back and shoulder pain, for which narcotic pain medication has been prescribed as treatment. Further, contrary to the ALJ's assertion, Plaintiff's treating physicians opinions are not based solely upon Plaintiff's subjective complaints of pain. They have conducted comprehensive range of motion testing, MRIs and x-rays. The Plaintiff need not have had back or shoulder surgery to be deemed disabled. Even Dr. Davis opined that Plaintiff's musculoskeletal injuries were chronic and not likely to improve with active treatment. (Tr. 180). As such, the ALJ provided no sufficient basis for rejecting the opinions of Plaintiff's treating physicians, improperly

affording them less weight. *Shelman*, 821 F.2d at 321.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's motions for judgment be GRANTED, and that the decision of the Commissioner be REVERSED. The Magistrate Judge recommends that this case be REMANDED to the Commissioner to further develop the record, specifically to obtain RFC assessments from the Plaintiff's treating physicians for the period of 2000 forward. The Magistrate Judge further recommends that Plaintiff's request to reopen his 1998 application be DENIED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc).

ENTERED this __15__ day of May, 2009

JOE B. BROWN
United States Magistrate Judge

12